UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

| | |
|---|---|
| **Cassandra Glassford**,<br><br>　　*Plaintiff*,<br>v.<br><br>**Oliphant Financial, LLC,**<br>**Avrutis & Foeller, PA**<br>**a/k/a Hodges, Avrutis & Foeller, PA**<br><br>　　*Defendant*. | Case No.: _____<br><br>**JURY TRIAL DEMANDED** |

**COMPLAINT AND DEMAND FOR JURY TRIAL**

**COMES NOW** the Plaintiff, **Cassandra Glassford** ("**Ms. Glassford**"), by and through her attorneys, Seraph Legal, P.A., and complains of the Defendants, **Oliphant Financial, LLC** ("**Oliphant**"), and **Avrutis & Foeller, PA, also known as Hodges, Avrutis & Foeller, PA** ("**A&V**") stating as follows:

**PRELIMINARY STATEMENT**

1. This is an action brought by Ms. Glassford against the Defendants for violations of the Florida *Civil Remedies for Criminal Practices Act*, Florida Statute § 772.101, *et. seq.* ("**CRCPA**"), the *Florida Consumer Collection Practices Act*, Florida Statute § 559.55, *et. seq.* ("**FCCPA**") and the *Fair Debt Collection Practices Act*, 15 U.S.C. § 1692, *et. seq.* ("**FDCPA**").

## JURISDICTION AND VENUE

1. Federal question jurisdiction arises under the FDCPA, 15 U.S.C. § 1692k(d) and 28 U.S.C. § 1331.

2. Supplemental jurisdiction arises under and 28 U.S.C. § 1367, the CRCPA, Florida Statute § 772.104, and FCCPA, Florida Statute § 559.77.

3. The Defendants are subject to the provisions of the FDCPA, FCCPA and CRCPA, and to the jurisdiction of this Court pursuant to Fed. R. Civ. P. 4(k)(1)(A) to Section 48.193, Florida Statutes.

4. Venue is proper in Middle District of Florida, pursuant to 28 U.S.C. §1391(b)(2), because the acts complained of were committed and / or caused by the Defendants therein.

## PARTIES – Ms. Glassford

5. **Ms. Glassford** is a natural person who at all times relevant has resided in Tampa, Hillsborough County, Florida.

6. Ms. Glassford is a *Consumer* as defined by 15 U.S.C. § 1692a(3) and Florida Statute § 559.55(8).

## PARTIES – Oliphant

7. **Oliphant** is a Florida limited liability company with a primary business address of **1800 2nd St. Suite 603, Sarasota, FL 34236**.

8. Oliphant is registered to conduct business in the State of Florida, where its Registered Agent is **URS Agents, LLC, 3458 Lakeshore Dr., Tallahassee, FL 32312.**

## PARTIES – A&V

9. **A&V** is a professional corporation with a primary business address of 201 Fletcher Ave., Sarasota, FL 34237.

10. **A&V**'s registered agent is Thomas Avrutis, 201 Fletcher Ave., Sarasota, FL 34237.

11. The Defendants are "debt collectors" within the meaning of the FDCPA, 15 U.S.C. § 1692a(6), and the FCCPA, Fla. Stat. § 559.55(7), in that the Defendants use an instrumentality of commerce, including the U.S. mail and / or telephone, interstate and within the state of Florida, for their business, the principal purpose of which is the collection of debts, and / or they regularly collect or attempt to collect, directly or indirectly, debts owed or due or asserted to be owed or due another.

12. Additionally, Oliphant is registered with the Florida Office of Financial Regulation as a *Consumer Collection Agency* ("**CCA**"), holding license number **CCA0900469. SEE PLAINTIFF'S EXHIBIT A.**

## FACTUAL ALLEGATIONS

### Lending Club Makes Illegal Loan to Ms. Glassford

13. In or around May 29, 2019, Ms. Glassford obtained an installment loan (the "**LendingClub Loan**") from the online lender LendingClub Corporation ("**LendingClub**").

14. The LendingClub Loan had a stated principal of $12,350.

15. Pursuant to the loan agreement's Truth In Lending Act ("TILA") disclosure, the stated annual percentage rate ("APR") at which LendingClub assessed interest was 34.33%. **SEE PLAINTIFF'S EXHIBIT B.**

16. LendingClub also charged a $741 "origination fee" which is, as the name implies, a fee charged by LendingClub simply to originate the loan. This fee is, essentially, *de facto* interest, but is excluded from the TILA interest calculation. Had it been included, the effective annual percentage rate of the LendingClub Loan would have been **37.84%** annually.

17. Ms. Glassford used The LendingClub Loan to purchase consumer goods and services. Thus, debt arose from the purchase of goods and services which were primarily for family, personal, or household purposes, and therefore meets the definition of *Debt* under the FDCPA, 15 U.S.C. § 1692a(5) and the FCCPA, Florida Statute § 559.55(6).

18. Florida Statue 687.071(2) renders loans made at interest rates between 25 to 45 percent per year a second-degree misdemeanor.

19. Florida Statute 687.071(7) indicates any such loan, and logically any debt stemming from such extension of credit, is void and unenforceable.

20. The annual interest rate on the LendingClub Loan exceeded 34%.

21. The loan made by LendingClub to Ms. Glassford was thus *void ab initio*. *See Stubblefield v. Dunlap*, 148 Fla. 401, 4 So.2d 519 (1941); *Pushee v. Johnson*, 123 Fla. 305, 166 So. 847 (1936); *River Hills, Inc. v. Edwards*, 190 So.2d 415 (Fla. 2d DCA 1966). *Richter Jewelry Co. v. Schweinert*, 169 So. 750, 758-59 (Fla. 1935) (criminally usurious

loans are "void as against the public policy of the state as established by its Legislature.")

22. The LendingClub loan is therefore an "unlawful debt" per Florida Statute § 772.102(2).

23. Florida law prohibits any recover of the principal on such loans. *Rollins v. Odom*, 519 So. 2d 652, 656 (Fla. Dist. Ct. App. 1988).

24. <u>Any</u> amount repaid on an illegal, usurious debt deemed *void ab initio* by state law constitutes unjust enrichment, even if less than the original amount of the loan. See, e.g., *Williams et al. vs. Big Picture Loans, LLC*, case 3:17-cv-461, E.D. Virginia, July 20, 2021.

### LendingClub Engages in Rent-a-Bank Scheme with WebBank

25. LendingClub is a San Francisco-based "FinTech" business which frequently makes loans to consumers at interest criminally usurious in many states, including Florida.

26. In an effort to avoid state usury laws, LendingClub "partnered" with **WebBank**, a single-branch bank chartered in Utah, which has no maximum legal interest rate enshrined in its state law.

27. Ostensibly, the LendingClub Loan was made to Ms. Glassford "by" WebBank.

28. Then, supposedly, immediately after origination, the loan was assigned to LendingClub.

29. LendingClub then assessed interest, collected payments, reconciled accounting, and performed all other meaningful business activities.

30. WebBank, as a bank, is not subject to state interest rate limits pursuant to the National Bank Act and could charge the maximum interest rate allowed by the law of the state in which it was chartered.

31. Not coincidentally, Utah has no maximum legal interest rate enshrined in its state law.

32. However, despite its name appearing on the loan documents, WebBank had virtually nothing to do with the origination, underwriting, collection, or servicing of the loan, nor of the post-charge-off sale to Defendant Oliphant.

33. Moreover, at no point was any of WebBank's own capital actually at risk, nor did WebBank stand to profit, other than nominally, had Ms. Glassford paid the loan in full.

34. WebBank was simply paid a fee by LendingClub to create the appearance of legitimacy in what is often referred to as a "rent-a-bank" scheme. LendingClub, which was, at all times relevant, a non-bank entity ("NBE") was the real lender of the loan.

35. In "rent-a-bank" schemes, predatory lenders like LendingClub make loans to consumers in states which prohibit usury, including Florida, using the bank's exemption from state usury laws as a shield.

36. Indeed, WebBank rents itself to many other FinTech lenders, including Avant, LLC ("Avant"), a Chicago-based FinTech start-up which makes loans to consumers at rates as high as 69% annually.

37. In 2020, the Attorney General for the State of Colorado brought legal action against Avant for its evasion of Colorado's usury laws by using a sham "relationship" with WebBank, resulting in a multi-million-dollar settlement with Colorado and an agreement to modify lending practices to requiring WebBank to be the real lender of future Avant loans in a more meaningful capacity. *See Fulford v. Avant of Colorado, LLC*, No. 17CV30377 (Colo. Dist. Ct. Denver County Aug. 13, 2018).

38. As per LendingClub's business model, once WebBank "made" the loan to Ms. Glassford, the loan was immediately assigned to LendingClub. LendingClub would then sell the loan to its individual investors via its web platform. Retail investors could purchase shares of loans originated by LendingClub and become an "investor" in a consumer's loan – often called "peer-to-peer" lending. LendingClub remained the servicer of the loan and collected fees for its efforts.

39. LendingClub's website in December 2017 explained that "We're not a bank. Instead, we connect borrowers with investors through our online marketplace… In exchange for solid returns, investors purchase Notes, which correspond to fractions of loans."

40. LendingClub's arrangement with WebBank was nothing more than a sham designed to provide legal cover for LendingClub's illegal loans. But even

assuming, *arguendo,* WebBank was the real lender of Ms. Glassford's loan, documents from LendingClub and in possession of the Defendants make it crystal-clear that WebBank simply originated the loan, and then assigned it to LendingClub, a NBE.[1]

41. However, LendingClub, a non-bank assignee of the LendingClub Loan, had no legal ability to collect 34.53% interest, a rate far above the maximum lawful rate in Florida. *See. Madden v. Midland Funding, LLC*, 786 F.3d 246 (2d Cir. 2015) (rejecting NBE Midland Funding's claim it could lawfully collect interest in excess of state caps under a "valid-when-made" doctrine).

42. LendingClub, through ones of its subsidiaries, also acts as the servicer for the LendingClub loans. LendingClub reconciles the accounts, posts payments and other credits to the accounts, and provides periodic billing statements to consumers.

43. LendingClub, not WebBank, is the true lender of Ms. Glassford's purported loan, because it has the predominant economic interest in loans made to consumers like Ms. Glassford. *See Fulford v. Marlette Funding, LLC,* No. 17CV30376 and *Fulford,* Id. See also, e.g., *State Bank v. Strong*, 651 F.3d 1241 (11th Cir. 2011); Easter v. Am. W. Fin., 381 F.3d 948, 957 (9th Cir. 2004); *CFPB v. CashCall, Inc.,* No. CV 15-7522-JFW (RAOx), 2016 WL 4820635 (C.D. Cal. Aug. 31, 2016); *Penn v. Think Fin., Inc.*, No. 14-cv-7139, 2016 WL 183289 (E.D. Pa. Jan. 14, 2016); *Goleta Nat'l Bank v. Lingerfelt*, 211 F. Supp. 2d 711 (E.D. N.C. 2002); *CashCall, Inc. v. Morrisey*, No. 12-

---

[1] Due in part significant state and federal regulatory investigation of LendingClub's "rent-a-bank" scheme with WebBank, LendingClub purchased Radius Bank in 2020 for $185 million in cash and stock. As of February 1, 2021, LendingClub now is a bank entity and makes loans through Radius Bank, now a subsidiary of LendingClub.

1274, 2014 WL 2404300 (W. Va. May 30, 2014) (memorandum decision); *Ubaldi v. SLM Corp.*, 852 F. Supp. 2d 1190 (N.D. Cal. 2012); and *Eul v. Transworld Sys.*, No. 15 C 7755, 2017 WL 1178537 (N.D. Ill. Mar. 30, 2017).

44. Beyond this, Florida's "usury statutes show clear legislative intent to prevent accomplishment of a usurious scheme by indirection, and the concealment of the needle of usury in a haystack of subterfuge." *Pinchuck vs. Canzoneri*, 920 So. 2d 713, 715-16, (Fla. 4th DCA, 2006).

45. Ms. Glassford repaid $5,773 to LendingClub between May 2019 and January 2020, according to information Lending Club reported to Experian, one of the largest nationwide consumer credit reporting agencies. **SEE PLAINTIFF'S EXHIBIT C.**

46. Notably, Lending Club reported **it** and not WebBank was the creditor of the account. *Id.*

47. Around March 30, 2020, LendingClub sold and assigned the Lending Club Loan to Defendant Oliphant.

48. At no point did Oliphant mail any written notice of assignment of debt to Ms. Glassford, advising her ownership of the Lending Club Loan had changed.

49. Oliphant then hired Defendant A&V to collect the LendingClub Loan from Ms. Glassford.

50. On April 29, 2021, Thomas Avrutis and Scott Foeller, as attorneys for A&V and Oliphant, filed a lawsuit against Ms. Glassford in Polk County Civil Court,

seeking judgment to be entered against Ms. Glassford for $13,140.48 and in favor of Oliphant.

51. The Defendants thus sought to enforce an unlawful debt against Ms. Glassford.

52. The Defendants brought such lawsuit despite not providing notice of assignment of debt and waiting at least 30 days to take further action, as required by Florida Statute § 559.715.

53. Defendants' Collection Lawsuit was a communication as defined by the FDCPA, 15 U.S.C. § 1692a(2), and the FCCPA, Florida Statute § 559.55(2).

54. A&V included the TILA disclosure showing the 34.33% annual interest rate as an exhibit in the filed lawsuit.

55. The Defendants knew, or should have known, they were collecting illegal debt from Ms. Glassford. A&V to have substantial experience concerning the collection of debts and are attorneys admitted to practice in Florida. A&V file hundreds, and likely thousands, of collection lawsuits against Florida consumers each year and are, presumably, highly proficient in state and federal consumer protection statutes.

56. The usurious interest rate was printed in large, bold type on the TILA disclosure.

57. Indeed, the Defendants lawsuit admits LendingClub was an assignee of the purported debt from WebBank; Defendants included as an exhibit a "Bill of Sale" purporting to establish ownership of the Lending Club Loan by Oliphant in its lawsuit.

The "Bill of Sale" indicates the Lending Club Loan was sold by "Lending Club Corporation, A Delaware corporation."

58. The bill of sale conveying title to Ms. Glassford's loan made zero reference to WebBank and referred exclusively to LendingClub as the seller of the debt.

59. An additional exhibit was included in the Defendants' lawsuit against Ms. Glassford which an officer of WebBank certifies that WebBank had originated the loans and then, "subsequent to each origination, (WebBank) transferred or otherwise conveyed to (LendingClub)" Ms. Glassford's loan, and that WebBank "conveyed to (Lending Club) all of (WebBank's) right, title and interest in each Loan."

60. Thus, pursuant to the Defendants' own filings in Polk County, it acquired Ms. Glassford's loan from LendingClub, a non-bank entity.

61. Fair market value of charged-off debt similar to Ms. Glassford's is roughly 4 cents on the dollar. The $10 Million worth of debt Oliphant bought from Lending Club would cost it approximately $400,000. These funds were paid to Lending Club, not WebBank, despite WebBank being the supposed "lender" -- and would, presumably, be entitled to the proceeds from any distressed asset sale.

62. A&V, as an attorneys practicing in Florida, were required to have made full and meaningful review of the lawsuit it filed on behalf of their client, Oliphant, prior to filing it. As such, they was aware – or should have been aware—the debt they was filing a complaint against Ms. Glassford for was founded on an illegally-high interest rate assessed by a NBE who was not exempt from Florida law.

63. Ms. Glassford has no legal training and is unfamiliar with Florida consumer protection statutes, and reasonably believed, when she was served a summons by a process server to appear in Hillsborough County Court, that the debt she was being sued for by the Defendants was, in fact, a legally-enforceable debt.

64. Ms. Glassford has incurred significant legal expenses in defending the Defendants' meritless lawsuit.

65. As principal, Oliphant is responsible for its agents' actions.

66. Ms. Glassford has hired the aforementioned law firm to represent her in this matter and has assigned her right to fees and costs to such firm.

## COUNT I
## VIOLATIONS OF THE FDCPA

67. Ms. Glassford adopts and incorporates paragraphs 1 – 66 as if fully stated herein.

68. The Defendants violated **15 U.S.C. § 1692e and 1692e(10)** when A&V, as attorneys for Oliphant, used misleading and deceptive means to attempt to collect a debt by filing a lawsuit in a Florida court, claiming a debt from an unlicensed, non-bank entity, LendingClub, bearing at least 34.33% annual interest, was a legal, valid, and enforceable debt, when the LendingClub was null, void, and unenforceable under Florida law.

69. The Defendants violated **15 U.S.C. § 1692e(2)(a)** when A&V, as attorneys for Oliphant made a false representation about the character, amount and/or legal status of a debt by filing a lawsuit alleging a Debt from an unlicensed, non-bank

entity, LendingClub, bearing at least 34.33% annual interest, was a legal, valid, and enforceable debt, when the LendingClub Loan was null, void, and unenforceable under Florida law.

70. The Defendants violated **15 U.S.C. § 1692e(5)** when they threatened to take action which could not legally be taken, to wit, obtaining judgment from an underlying debt made by an unlicensed, non-bank entity, LendingClub, bearing at least 34.87% annual interest, when the LendingClub Loan was null, void, and unenforceable under Florida law; additionally, the Defendants threatened to obtain judgment despite not fulfilling their legal obligation to provide written notice of assignment of debt prior to initiating their lawsuit.

71. The Defendants violated **15 U.S.C. § 1692e(8)** when they communicated credit information which they knew, or should have known, was false, specifically that Ms. Glassford legally owed the balance of the LendingClub Loan, made by an unlicensed, non-bank entity, LendingClub, bearing at least 34.33% annual interest, when the LendingClub Loan was null, void, and unenforceable under Florida law.

72. The Defendants violated **15 U.S.C. § 1692f(1)** when they attempted to collect the LendingClub from Ms. Glassford through the filing of a lawsuit, when the LendingClub Loan was null, void, and unenforceable under Florida law.

73. The Defendants' conduct renders them liable for the above-stated violations of the FDCPA.

**WHEREFORE,** Ms. Glassford respectfully requests that this Honorable Court enter judgment against Oliphant and A&V, jointly and severally, for:

    a.    Statutory damages of **$1,000.00**, pursuant to 15 U.S.C. § 1692k(a)(2)(A);

    b.    Actual damages of at least **$10,000**, pursuant to 15 U.S.C. § 1692k(a)(2)(A);

    c.    Reasonable costs and attorneys' fees pursuant to 15 U.S.C. § 1692k(a)(3); and,

    d.    Such other relief that this Court deems just and proper.

## COUNT II
## VIOLATIONS OF THE CRCPA

74.    Ms. Glassford incorporates Paragraphs 1 – 66 as if fully restated herein.

75.    **Oliphant** violated **Florida Statute §§ 772.103(1)** when it, with criminal intent, engaged in a pattern of criminal activity through the collection of unlawful debt, the proceeds of which were invested into its enterprise to fund, amongst other things, the purchase of more unlawful debt.

76.    **Oliphant** violated **Florida Statute §§ 772.103(2)** when it, with criminal intent, engaged in a pattern of criminal activity through the collection of unlawful debt, the proceeds of which were utilized to maintain its enterprise.

77.    **A&V** violated **Florida Statute §§ 772.103(3)** when it, with criminal intent, engaged in a pattern of criminal activity through the collection of unlawful debt, using the special status granted to them as attorneys-at-law to intimidate consumers into paying unlawful debts through the filing of spurious lawsuits, and were employed by or associated with Oliphant and, by extension, LendingClub.

78. **Oliphant** violated **Florida Statute § 772.103(4)** when it conspired with LendingClub and A&V, to collect an unlawful debt - – the LendingClub Loan – and to use any funds collected in furtherance of Oliphant's ongoing enterprises.

79. **A&V** violated **Florida Statute § 772.103(4)** when they conspired with LendingClub and Oliphant to collect an unlawful debt – the LendingClub Loan – and to use any funds collected in furtherance of Oliphant's ongoing enterprises, as well as its own.

80. The Defendants took action in furtherance of this conspiracy, including mailing a collection letter, filing of a lawsuit in Polk County Civil Court, and demanding payment and seeking court judgment.

81. The Defendants have sued other Florida residents for debts made under virtually-identical terms as Plaintiff's LendingClub Loan and have attempted to collect similar debts through phone calls, demand letters, and threats of litigation, as well as actual litigation, from a considerable number of other Florida residents.

**WHEREFORE,** Ms. Glassford respectfully requests this Honorable Court enter judgment against Oliphant and A&V, ordering:

a. Threefold the amount of actual damages (which include Ms. Glassford's attorney fees in defending Defendants' lawsuit) or, in the alternate, the statutory minimum of $200, whichever is greater, pursuant to Florida Statute 772.104(1);

b. Reasonable costs and attorneys' fees pursuant to pursuant to Florida Statute 772.104(1);

    c.    An injunction of Estoppel against the Defendants from engaging in any further action in violation of Florida law, pursuant to Florida Statute 772.14; and,

    d.    Any other relief this Court deems equitable and proper under the circumstances.

**COUNT III**
**VIOLATIONS OF THE FCCPA**

82.    Ms. Glassford incorporates Paragraphs 1 – 66 as if fully restated herein.

83.    The Defendants violated Section **559.72(9)**, Florida Statutes, when they attempted to collect the LendingClub Loan from Ms. Glassford by filing a lawsuit and seeking judgment concerning the LendingClub Loan, an illegitimate and unenforceable illegal debt due to its nearly 35% annual interest rate, in violation of Section 687.071, Florida Statutes, and the Defendants knew, or should have known, the LendingClub Loan was null, void, and unenforceable in Florida.

84.    The Defendants violated Section **559.72(9)**, Florida Statutes, when they asserted rights which do not exist, specifically, the right to collect the LendingClub Loan from Ms. Glassford, when the loan was not legally owed pursuant to Florida law.

85.    The Defendants violated Section **559.72(9)**, Florida Statutes, when they asserted rights which do not exist, specifically, the right to collect the LendingClub Loan from Ms. Glassford by filing a lawsuit against her, despite the Oliphant having

failed to send notice of assignment of debt and waiting at least 30 days after the mailing of such notice.

86. The Defendants were in possession of the original loan documents and thus knew, or should have known, that the loan contained an illegal interest rate in Florida. The documents were professionally reviewed by at least two attorney-at-law working for A&V.

87. **WHEREFORE,** Ms. Glassford respectfully requests this Honorable Court enter judgment against Oliphant and A&V for:

   a. Statutory damages of **$1,000.00** pursuant to Section 559.77(2), Florida Statutes;

   b. Actual damages of at least **$10,000** pursuant to Section 559.77(2), Florida Statutes;

   c. Injunctive relief preventing the Defendants from attempting to collect the alleged loan from Ms. Glassford pursuant to Section 559.77(2), Florida Statutes;

   d. Reasonable costs and attorney's fees pursuant to pursuant to Section 559.77(2), Florida Statutes; and,

   e. Such other relief that this Court deems just and proper.

## DEMAND FOR JURY TRIAL

Ms. Glassford hereby demands a trial by jury on all issues so triable.

Respectfully submitted on August 18, 2021, by:

SERAPH LEGAL, P. A.

*/s/ Thomas M. Bonan*
Thomas M. Bonan Esq.
Florida Bar No.: 118103
TBonan@SeraphLegal.com
1614 N 19th Street
Tampa, Florida 33605
Tel: 813-567-1230
Fax: 855-500-0705
*Attorney for Plaintiff*

**ATTACHED EXHIBIT LIST**
A    OLIPHANT's Florida CCA License Record
B    LendingClub's Truth in Lending Disclosure - Excerpt
C    Plaintiff's Experian Consumer Disclosure, Dated March 20, 2021 – The LendingClub Tradeline - Excerpt